# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

THOMAS AUSTIN HILL,

   Plaintiff,

 v.

TRATE, *et al.*,

   Defendants.

Case No.  1:24-cv-00823-KES-BAM (PC)

FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM

(ECF No. 22)

**FOURTEEN (14) DAY DEADLINE**

Plaintiff Thomas Austin Hill ("Plaintiff") is federal prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to *Bivens v. Six Unknown Names Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  Before the Court could screen the complaint, Plaintiff sought leave to file an amended complaint, which the Court granted. The Court screened Plaintiff's first amended complaint, and Plaintiff was granted leave to amend.  Plaintiff's second amended complaint is currently before the Court for screening.[1]  (ECF No. 22.)

---

[1] As a federally sentenced prisoner, Plaintiff may proceed only under *Bivens* or the Federal Tort Claims Act.  While Plaintiff's form complaint checked the box that he is proceeding under "42 U.S.C. 1983 (State Prisoner)," Plaintiff cannot proceed under Section 1983. The federal government, and its actors, are not "persons" for the purpose of a section 1983 action. *See Morse v. North Coast Opportunities*, 118 F.3d 1338, 1343 (9th Cir. 1997) "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).  The Court will therefore screen the complaint under *Bivens* and its prodigy.

1

## I.    Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.    Plaintiff's Allegations

Plaintiff is currently housed at the United States Penitentiary at Victorville, in Adelanto, CA.  Plaintiff alleges the events in the complaint occurred while Plaintiff was housed at USP Atwater.  Plaintiff names the following defendants:  (1) Warden B.M. Trate, (2) Officer R. Paulus, correctional officer, (3) Officer Barnes,[2] correctional officer, (4) Unknown officer, correctional officer.

---

[2] Plaintiff notes that there are two officers with the same name at USP Atwater.  Plaintiff is talking about the older one, not the one who works in the mental health department.

Plaintiff alleges violations of access to courts, due process, freedom from cruel and unusual punishment, excessive use of force, among other claims.  Plaintiff alleges that on 11/26/22, Plaintiff was retaliated against by Warden B.M. Trate as well as officers R. Paulus, Barnes and an unknown officer.  On 11/26/22, Plaintiff was housed on C-range cell 213 in the SHU when Plaintiff refused his meal; a paper bag containing four pieces of bread and one piece of cheese.  Forty-five minutes later the meal was passed out again with only an apple added and Plaintiff refused it again for the second time.

Warden B.M Trate arrived and became so upset that he began to shout "I'm going to teach you a lesson."  He then ordered three officers R. Paulus, Barnes, and another unknown officer into Plaintiff's cell where Plaintiff was dehumanized and sexually abused.  All the while the Warden B.M. Trate stood by watching and laughing.  Plaintiff was handcuffed and surrounded while in Plaintiff's cell, stripped naked of his boxer shorts.  Officer R. Paulus was making comments about how he was going to "bust my asshole" with his finger.  The Warden stated "bust it, bust it."

At this time, Officer R. Paulus and Officer Barnes held Plaintiff's arms and told Plaintiff to bend over and spread Plaintiff's cheeks.  Plaintiff had hand cuffs on and they were holding Plaintiff in such a way that Plaintiff could not bend over. The unknown officer had his hands around Plaintiff's neck so tight Plaintiff could not breath and almost passed out.  The unknown officer screamed in Plaintiff's ear to "bend over faggot."

Officer R. Paulus then took his gloved hand and rubbed it between Plaintiff's butt smacking Plaintiff's butt twice and laughing.  He then grabbed Plaintiff's testicles and squeezed them very tight.  Plaintiff yelled out in pain and he pulled Plaintiff's testicles in different directions, stating "it's smell down there" and "are you hiding anything in those dry nuts."  All three officers were all laughing.  Plaintiff was in pain and in fear of his life and started crying.

The cuffs were taken off so Plaintiff could take off his shirt.  He was then placed in a paper jump suit.  Plaintiff was hit in the stomach by officer Barnes before the cuffs were put back on at which time he said "now try me mother fucker."  Plaintiff screamed out in pain.  Warden Trate walked off but from the hall outside of Plaintiff's cell, he yelled "who's crying like a bitch

3

down there." This all took place without a camera present, and Plaintiff was in fear of his life and thought they would kill Plaintiff.

While being removed from the cell, Plaintiff asked the Warden where is the camera. The Warden stated that "my cell phone has a camera and your black ass is about to go viral."

Plaintiff was then removed from the SHU and taken to an abandoned vacant housing unit in cell #105. That cell did not have any running water, working showers and the toilet was not working in cell 1-A-105. The toilet had human waste in it and would not flush. Plaintiff is not sure of the length of time he was in the cell. Plaintiff did not get medical treatment while the only nurse was checking blood pressure because Plaintiff was throwing up. Plaintiff believes he was in the cell for a week and then was returned to the SHU.

While in the SHU and in 1-A-105 (vacant unit), the Warden B.M. Trate failed to allow Plaintiff access to the law library and ink pen and legal materials such as paper and envelopes to access the courts. Staff told Plaintiff that the Warden said no ink pens for inmates in the SHU. He could not go to the library to use the pen because the law library was out of service for the time Plaintiff was in the SHU. Because of that, Plaintiff missed a deadline in the Eastern District of California's Ninth Circuit. Plaintiff was also unable to file supplements in the Fourth Circuit. Plaintiff was also unable to add supplements to a pending request for compassionate release.

As remedies, Plaintiff seeks compensatory damages and that the officers undergo ethics training to prevent them from doing the same thing to other inmates.

**III.    Discussion**

**A.    Federal Rules of Civil Procedure 18 and 20**

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); Mackey v. Price, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement

4

refers to similarity in the factual background of a claim. Id. at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not raise different claims against different defendants in a single action. For instance, Plaintiff may not state unrelated claims, arising on different dates, regarding different claims, such a force, retaliation, conditions of confinement, false incident reports, access to courts, and other claims.

### B. *Bivens* Actions Following *Ziglar v. Abbasi*

Plaintiff is a federal prisoner alleging various claims against multiple defendants.  As he is a federal prisoner, Plaintiff's claims proceed under *Bivens*, 403 U.S. 388 (1971).  To date, the Supreme Court has only recognized a *Bivens* remedy in the context of the Fourth, Fifth, and Eighth Amendments. *See Bivens*, 403 U.S. 388 (Fourth Amendment prohibition against warrantless unreasonable searches and seizures); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment employment gender-discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment). The Supreme Court has recently made clear that "expanding the *Bivens* remedy is now a disfavored judicial activity," and has "consistently refused to extend *Bivens* to any new context or new category of defendants. *Ziglar v. Abbasi*, 582 U.S. 120, 137 S.Ct. 1843, 1857 (2017) (citations omitted); *see Egbert v. Boule*, 142 S.Ct. 1793, 1803 (2022) (The Court reiterated that "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'").

Traditionally, courts applied a two-part test to determine the appropriateness of extending a *Bivens* cause of action. First, the Court examined whether the claim arises in a "new context" or involves a "new category of defendants." *Hernandez v. Mesa*, 140 S.Ct. 735, 743 (2020). Second, if the claim does indeed arise in a new context, the Court assessed whether there exists any "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 582 U.S. at 136, 137 S.Ct. at 1857 (internal quotations omitted). However, the Supreme Court recently reformulated this test. In *Egbert*, 142 S.Ct. at 1803, the Supreme Court determined that these two steps can be distilled to one single inquiry; that is, "whether there is any reason to think

5

that Congress might be better equipped to create a damages remedy." Further, the Court specified that if there is even one rational reason to defer to Congress to afford a remedy, then "a court may not recognize a *Bivens* remedy." *Id.* Practically, the Court concluded that a rational reason for deference to Congress will exist "in most every case." *Id.*

Finally, the presence of an alternative remedial structure counsels against extending *Bivens* to a new cause of action. The Court may not even determine the adequacy of the alternative remedy, as this too is a task left to Congress. *Egbert*, 142 S.Ct at 1807. Indeed, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* This remains true "even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

Plaintiff asserts claims a variety of difference claims: for excessive force, access for courts, retaliation, sexual abuse, due process, conditions of confinement, false reports, verbal harassment.

### 1. *Bivens* Step One: Context

In the instant action, the Court finds that all of Plaintiff's claims arise in new contexts from those identified in *Bivens*, 403 U.S. at 396-97, *Carlson*, 446 U.S. at 19, and *Davis*, 442 U.S. at 248-49. See *Egbert*, 596 U.S. at 492-93; *Ziglar*, 582 U.S. at 139-40.

#### Due Process

Plaintiff maybe alleging his due process rights were violated in connection with his placement and retention in the SHU.  The Ninth Circuit has declined to find a *Bivens* remedy appropriate for a former prisoner's Fifth Amendment due process claim, finding the case was "different in a meaningful way from previous *Bivens* cases." *Vega v. United States*, 881 F.3d 1146, 1152 (9th Cir. 2018) (internal citation omitted).

#### First Amendment: Access to Courts and Retaliation

Plaintiff's claim alleging interference with his access to the courts, a First Amendment violation, also presents a new context. The Supreme Court has never recognized a *Bivens* remedy

6

under the First Amendment. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)); *Bush v. Lucas*, 462 U.S. 367, 368 (1983) (declining to "authorize a new nonstatutory damages remedy for federal employees whose First Amendment rights are violated by their superiors."). The Ninth Circuit has also declined to recognize a *Bivens* remedy under the First Amendment. *Schwarz v. Meinberg*, 761 F. App'x 732, 734-35 (9th Cir. 2019) (finding denial of access to courts claim was a "new *Bivens* context" and declining to extend private right of action). *Egbert* also refused to extend *Bivens* to a First Amendment retaliation claim. *Egbert*, 596 U.S. at 498 ("there is no *Bivens* cause of action for Boule's First Amendment retaliation claim.")

**Excessive Force**

Plaintiff's allegations as to excessive force or sexual abuse would present claims arising in new and different contexts from those already identified in *Bivens*, 403 U.S. at 396-97, *Carlson*, 446 U.S. at 19, and *Davis*, 442 U.S. at 248-49. The Supreme Court has already rejected extending *Bivens* to claims of force used by federal officers. *See Chambers v. C. Herrera*, 78 F.4th 1100, 1107 (9th Cir. 2023) (rejecting an Eighth Amendment excessive force claim under *Bivens*).

**Other Allegations**

None of the other alleged violations associated with plaintiff's claims of false reports, conditions of confinement, verbal and sexual harassment, and/or denial of access to the courts based on lack of supplies are similar to the narrow claims presented in *Bivens*, *Carlson* or *Davis*.

Because the Supreme Court has not extended a *Bivens* remedy to the facts presented in Plaintiff's complaint, Plaintiff's claims present new contexts under *Bivens*.

Plaintiff may be attempting to allege a denial of medical care. However, Plaintiff also alleges he was seen by the nurse who was checking his blood pressure. Plaintiff fails to allege any other medical care he was in need of and which was denied.

Thus, the Court turns to the second step.

**2. *Bivens* Step Two: Special Factors**

Because the allegations in Plaintiff's complaint present new contexts under *Bivens*, the Court must determine whether any special factors preclude the extension of *Bivens*. To do so, this

7

Court must address "whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (citation omitted). Applying *Egbert* to Plaintiff's allegations, the Court finds that a *Bivens* remedy should not be extended here. First, extending *Bivens* to Plaintiff's claims "would create a broad new source of liability for prison officials," and "[t]his alone is enough to place it beyond the purview of the courts to create a remedy, because courts may not 'independently assess the costs and benefits of implying a cause of action.' " *Chambers v. Herrera*, 78 F.4th 1100, 1106 (9th Cir. 2023) (quoting *Egbert*, 596 U.S. at 496).

Second, a *Bivens* remedy is foreclosed because there is an alternative remedial structure in place. *Egbert*, 596 U.S. at 493.  In this case, the government has provided an alternative remedial structure for Plaintiff's claims. The BOP Administrative Remedy Program qualifies as an alternative remedy. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including ... grievances filed through the BOP's Administrative Remedy Program."). "In *Malesko*, we explained that *Bivens* relief was unavailable because federal prisoners could, among other options, file grievances through an Administrative Remedy Program." *Egbert*, 596 U.S. at 497 (internal quotation marks omitted); *see Hoffman v. Preston*, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) (finding *Bivens* remedy unavailable because Congress had not authorized a damages remedy and there were rational reasons why Congress might not authorize such a remedy, noting the "existence of the [BOP's] formal review process for inmate complaints")

### C.  Federal Tort Claim

To the extent Plaintiff purports to bring claims pursuant to the Federal Tort Claims Act ("FTCA"), Plaintiff fails to state a claim.  FTCA claims may only be brought against the United States. *Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998) (per curiam). Additionally, there is an exhaustion requirement for FTCA claims, which must be pled in the complaint. *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980) ("The timely filing of an administrative claim is a jurisdictional prerequisite to the bringing of a suit under the FTCA, and as such, should be affirmatively alleged in the complaint." (citations omitted)). Here, Plaintiff

may be alleging that there were no responses to his administrative tort claims. "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675. Plaintiff does not allege that he waited six months after presenting his claim. Plaintiff is reminded that the exhaustion requirement for an FTCA claim is separate from the exhaustion requirement under the Prison Litigation Reform Act. *See Mendoza v. United States*, 661 Fed. App'x 501, 502 (9th Cir. 2016) ("We reject Mendoza's contention that exhaustion under the Prison Litigation Reform Act satisfies the requirement to exhaust under the FTCA.").

**IV.    Conclusion**

Plaintiff's allegations arise in new contexts and therefore may not be asserted under *Bivens*. In addition, special factors counsel against recognizing new *Bivens* claims in such contexts because to do so would broaden federal prison officials' liability, and Plaintiff has an alternative remedy under the BOP Administrative Remedy Program. Thus, Plaintiff's complaint fails to state a claim.

Plaintiff's second amended complaint fails to state a cognizable claim under *Bivens.* Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies in his amended complaint. Further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed, with prejudice, for failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** Plaintiff is advised that failure to file objections within the

specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 24, 2026**                    /s/ *Barbara A. McAuliffe*
                                                  UNITED STATES MAGISTRATE JUDGE